IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SHARON NORRIS          )
                       )
v.                     )    No. 3:13-0731
                       )    Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION  )

To:    The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits, as provided under Title II of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 15), to which defendant has responded (Docket Entry No. 17). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I. Introduction

Plaintiff filed her application for benefits in March 2010, alleging disability onset as of July 14, 2008. (Tr. 13) Her application was denied at the initial and

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on November 7, 2011, when plaintiff appeared with counsel and gave testimony. (Tr. 28-59) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until January 17, 2012, when he issued a written decision finding plaintiff not disabled. (Tr. 13-21) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since July 14, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: osteoarthritis; diabetes; hypertension; and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can only occasionally climb, balance, stoop, kneel, crouch, and crawl.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 5, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). At the hearing level, the claimant was 45 years old.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 14, 2008, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-16, 19-21)

On May 29, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following discussion of the medical record (and conclusions drawn therefrom) is taken from pages 5-7 of the ALJ's decision. (Tr. 17-19)

> In terms of the claimant's severe medical impairments of hypertension and diabetes, the claimant has received sporadic treatment for both of the listed impairments. The claimant was evaluated using electrocardiogram (EKG) testing for hypertension and cardiomyopathy in June of 2010 by Murali Kolli, M.D. Dr. Kolli found mild left ventricular hypertrophy with normal wall motion with an estimated ejection fraction of 60%; mild left atrial enlargement; and mild pulmonary insufficiency. In July of 2010, the claimant

underwent a coronary angiography with no complications and was released home. The results of the procedure revealed left ventricular end-diagnostic pressure at 20 mmHg, normal coronary arteries, left ejection fraction of 55%, and normal systolic function (Exhibit 8F).

The undersigned acknowledges the claimant's blood sugar readings, A1C readings, and blood pressure readings have ranged significantly above the scale for normal readings (Exhibits 1F, 2F, 4F, 7F, 8F, 11F, and 12F); however, the record also indicates the claimant is noncompliant with the treatment she has received with regard to these impairments. On April 25, 2011, her treating provider at the Eagleville Clinic annotated, "Patient was requested to f/u (follow-up) in January regarding blood pressure. Is not taking Lasix qd because 'it makes me pee to much', is not checking blood sugar routinely, is not taking Lantus as prescribed last visit ('too expensive'). Patient is generally noncompliant at this point. Spent 20 minutes discussing and encouraging diet, importance of blood pressure control and control of diabetes. Patient refused diabetic 'ed' classes for further assistance with management of her diabetes" (Exhibit 11F). The evidence reveals the claimant has not been entirely compliant in taking prescribed medications and has refused recommended treatment, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application.

With regard to the claimant's severe impairment of osteoarthritis, the record indicates the claimant received treatment for complaints of back pain and was diagnosed with osteoarthritis in her back and left hip (Exhibit 3F); however, the record lacks sufficient objective evidence of a disabling condition. On numerous occasions, the claimant reported for treatment for her other impairments yet she offered no complaints of pain in her back or hip (Exhibits 8F page 29, and 12F page 7). Additionally, the claimant consistently reported having no problems with daily living when being treated (Exhibits 2F and 8F). Furthermore, the record shows the claimant displayed normal gait including tandem walking on heels and toes; muscle strength 5/5 in upper and lower extremities proximally and distally (Exhibit 12F).

The claimant is morbidly obese. Throughout the documented medical records, the claimant's weight fluctuated between 260 pounds and 278 pounds. The claimant is 63.5" tall; therefore, her Body Mass Index (BMI) fluctuated between 35% and 48.47% (Exhibits 3F, 7F, and 12F). The undersigned has considered the claimant's obesity in relationship to her other severe

impairments in creating the determined residual functional capacity above.

The claimant presented to the Stonecrest Medical Center in September of 2011 complaining of left arm numbness/paresthesias, headache, and dizziness/vertigo. The claimant underwent a Magnetic Resonance Angiogram (MRA) to determine the cause of her symptoms. The findings of the MRA revealed widely patent bilateral intracranial interral carotid arteries; unremarkable appearance of both proximal ophthalmic arteries; unremarkable appearance of the anterior communicating artery; patent bilateral and middle cerebral arteries; the Circle of Willis is complete; unremarkable appearance of the cerebellar branches; and patent imaged intradural segments of both vertebral arteries. In summary, the impression was of a normal MRA of the head (Exhibit 12F).

Woodrow Wilson, M.D., examined the claimant consultatively in May of 2010. The claimant reported to the examination complaining of back pain and diabetes mellitus. During the examination, she denied cigarette, alcohol, or illicit drug use; however, she reported tobacco use and occasional alcohol use when examined at the Middle Tennessee Medical Center in January of 2008, December of 2009, April of 2010, and again in July of 2010 (Exhibits 2F, 3F, and 8F). The claimant weighed 251 pounds with a BMI of 43.76%. Dr. Wilson examined the claimant and reported she was in no obvious distress and was able to use her arms to push herself out of the chair. Furthermore, Dr. Wilson opined, "her gait is normal with a good cadence. She can tandem walk six steps without difficulty. She can go up on her toes, back on her heels, and balance weight on each foot independently. Romberg was negative. The shoulders have full range of motion bilaterally except for external rotation is to 20 degrees on the right and 45 degrees on the left. Elbows, wrists, and hands have full range of motion. The hips, knees, and ankles have full range of motion. There is no joint effusion, no calf tenderness, no sweling or pitting edema. With regard to the claimant's thoracolumbar examination: She has flexion to 60 degrees, extension to 30 degrees, and lateral deviation in each direction to 30 degrees. She does complain of some pain in her back on motion. Straight leg raise was negative bilaterally." An x-ray of the lumbar spine was also performed with the findings and impression suggesting some degenerative spondylosis and degenerative changes in the left hip. Dr. Wilson diagnosed the claimant with adult onset of diabetes mellitus non-insulin-dependent; chronic back pain with history of osteoarthritis; hypertension; and obesity. Dr. Wilson opined the claimant could probably lift 10-15 pounds

5

occasionally; could sit for 4-6 hours in an 8-hour workday; and stand and walk for probably 2-4 hours each within an 8-hour workday (Exhibit 3F). The undersigned accords great weight to the opinion provided by Dr. Wilson in creating the determined residual functional capacity listed above.

Additionally, state medical consultants have reviewed the evidence and opined the claimant can perform less than the full range of medium work as defined in 20 CFR 404.1567(c) with the exception the claimant should only occasionally climb ropes, ladders, and scaffolds (Exhibit 5F). The undersigned accords great weight to this opinion; however, the undersigned has reduced the residual functional capacity to light due to the claimant's weight and osteoarthritis in her hip and back.

(Tr. 17-19)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether

the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r

of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry ... the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined

effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred in failing, at the second step of his evaluation, to explain why he did not consider severe plaintiff's diagnosed impairments of congestive heart failure, mild left ventricular hypertrophy, mild left atrial enlargement; mild pulmonary insufficiency, degenerative spondylosis, and degenerative changes of the left hip. Plaintiff states that "[t]hese impairments cause additional limitations which could prevent [her] from performing at the RFC assigned in the decision" (Docket Entry No. 15-1 at 6), but does not identify any such additional limitations. Plaintiff has not cited any support in the record for the argument that the *mild* cardiopulmonary findings identified above would be expected to cause significant additional limitations beyond those associated with plaintiff's hypertension and obesity (see, e.g., Tr. 307 ("Mild left ventricular dysfunction noted most likely related to hypertensive heart disease.")), nor that the degenerative changes identified above had an additional impact beyond the scope of such limitations associated with plaintiff's osteoarthritis (see, e.g., Tr. 235 (correlating complaints of pain in back and legs with recent osteoarthritis diagnosis) -- all of which were appropriately considered by the ALJ and found to be severe impairments. Finally, although the record reflects plaintiff's report of a history of congestive heart failure based on a 2001 echocardiogram (Tr. 301), her June 2010 hospital records make it clear that "she does not have any heart failure symptoms at this point" (Tr. 304), with only mild findings on echocardiogram at that point. (Tr. 317) The

9

undersigned finds no error here.[2]

Next, plaintiff argues that the ALJ erred in failing to include an explicit function-by-function assessment in his determination of plaintiff's RFC. The Sixth Circuit has addressed this matter as follows:

> In *Bencivengo [v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)]*, the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Bencivengo,* slip op. at 4. The Third Circuit distinguished between what an ALJ must consider and what an ALJ must discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Bencivengo,* slip op. at 5.

Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002). Here, the ALJ addressed plaintiff's exertional and nonexertional capabilities, making reference to the evidence that supports his conclusions. Again, plaintiff has failed to identify any evidence supporting an impairment of physical function which was not considered. The undersigned finds that the ALJ's RFC determination evidenced his entirely adequate consideration of plaintiff's functional abilities, and complied with SSR 96-8p. See, e.g., Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 729 (6th Cir. Sept. 5, 2013).

Plaintiff next argues that the ALJ erred in failing to appropriately consider the effects of plaintiff's obesity when determining her RFC. However, plaintiff fails to identify

---

[2]In addition, as the ALJ proceeded beyond step two and considered plaintiff's symptoms at subsequent steps of the sequential evaluation process, any error in the step two severity determination would be harmless. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).

any particular effect which was not considered, or point to any evidence which demonstrates the prejudice resulting from such a failure of consideration. Rather, she merely contends that the ALJ's decision lacks the "true analysis" of the effects of obesity that is required by Social Security Ruling 02-1p. (Docket Entry No. 15-1 at 8) However, as noted by the court in <u>Coldiron v. Comm'r of Soc. Sec.</u>, 391 Fed. Appx. 435, 443 (6th Cir. Aug. 12, 2010), it is "'a mischaracterization to suggest that Social Security Ruling 02–1p offers any particular procedural mode of analysis for obese disability claimants.' Instead, SSR 02-1p provides that 'obesity, in combination with other impairments, 'may' increase the severity of the other limitations.'" <u>Quoting</u> <u>Bledsoe v. Barnhart</u>, 165 Fed. Appx. 408, 412 (6th Cir. 2006) <u>and</u> SSR 02-1p. The ALJ here found that plaintiff's morbid obesity was a severe impairment (Tr. 15, 18), and his decision does not give any indication that he discounted the impact of that impairment when considering plaintiff's RFC. Rather, the ALJ explicitly considered plaintiff's obesity in conjunction with her physical examination findings (Tr. 18-19), and gave great weight to the medical opinion that she was limited to medium work, but "reduced the residual functional capacity to light due to the claimant's weight and osteoarthritis in her hip and back." (Tr. 19) It is clear to the undersigned that the ALJ properly considered the effects of plaintiff's obesity.

Lastly, plaintiff argues that the ALJ improperly discounted her credibility by overemphasizing plaintiff's application for, and receipt of, unemployment benefits during the time she alleges disability, and by otherwise offering only a single, conclusory statement that her allegations were not fully credible inasmuch as they were inconsistent with her performance of minimal daily activities. The undersigned finds no merit in these contentions. The ALJ gave the following treatment to the subject of plaintiff's credibility:

During the hearing, the claimant also testified that she was receiving unemployment insurance benefits during the period she was alleging disability; however, her unemployment had ended. The record indicates she was receiving $3,900-$4,200 per quarter in 2009 and a portion of 2010 (Exhibit 2D). Although receiving unemployment insurance benefits is not a basis for denying an otherwise qualified individual disability benefits, it calls into question the credibility of the person applying for the benefits. In order to receive unemployment insurance benefits, an individual must certify weekly that they are able, available, and looking for their usual work. In order to apply for and receive disability insurance, an individual reports they are no longer able to perform any basic work-related activities. The requirements to qualify for benefits under each program are inconsistent with one another in that one requires the person to look for their usual work while the other requires the person to be unable to perform any work in the national or local economy. Furthermore, the claimant testified after leaving her most recent work and [beginning to receive] unemployment insurance that she never looked for other work. Her testimony is again inconsistent with the above weekly certification requirement for receiving unemployment insurance benefits. In summary, the fact the claimant received unemployment benefits is not a determining factor in this decision; however, the claimant's credibility regarding her alleged impairments is called into question based on the above criteria.

Additionally, the claimant testified at the hearing she temporarily left her work in July of 2008 due to her health problems. According to testimony, three to four months later, she attempted to return to work; however, her position had been phased out. The claimant's testimony is inconsistent with the information she had previously provided the agency reporting she had permanently quit her job due to her medical conditions (Exhibit 2E).

* * *

. . . The evidence reveals the claimant has not been entirely compliant in taking prescribed medications and has refused recommended treatment, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application.

. . . On numerous occasions, the claimant reported for treatment of her other

> impairments yet she offered no complaints of pain in her back or hip (Exhibits 8F page 29, and 12F page 7). Additionally, the claimant consistently reported having no problems with daily living when being treated (Exhibits 2F and 8F). Furthermore, the record shows the claimant displayed normal gait including tandem walking on heels and toes; muscle strength 5/5 in upper and lower extremities proximally and distally (Exhibit 12F).

(Tr. 17-18)

The ALJ did not err in finding that plaintiff's application for unemployment insurance benefits reflected adversely upon the credibility of her claim to disability. The Sixth Circuit has held that applications for unemployment benefits are "inherently inconsistent" with disability benefits, and can provide a "good reason" for an adverse credibility finding. Workman v. Comm'r of Soc. Sec., 105 Fed. Appx. 794, 801-02 (6th Cir. July 29, 2004) (citing Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983)); Bowden v. Comm'r of Soc. Sec., 1999 WL 98378, at *7 (6th Cir. Jan. 29, 1999) (finding "no reasonable explanation of how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work"). Moreover, application for unemployment benefits shortly after the end of a period of employment supports the conclusion that the employment ended for a reason other than the applicant's disability. Allen v. Apfel, 2001 WL 92159, at *3 (6th Cir. Jan. 23, 2001). The undersigned otherwise finds that the ALJ's credibility finding -- which is due "great weight and deference" on judicial review, Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003) -- is supported by substantial evidence.

In sum, the decision of the ALJ is substantially supported and deserving of affirmance.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be **DENIED** and that the decision of the SSA be **AFFIRMED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 26th day of April, 2016.

     s/ John S. Bryant  
     JOHN S. BRYANT  
     UNITED STATES MAGISTRATE JUDGE